**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 25-1184**

—————————

WEI JIANG, M.D.,

       Plaintiff – Appellant,

   v.

DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEMS, INCORPORATED; MOIRA RYNN, M.D., in her individual and official capacity; MARY E. KLOTMAN, in her individual and official capacity,

       Defendants – Appellees.

—————————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, Senior District Judge.  (1:22-cv-00101-LCB-JEP)

—————————

Submitted:  January 7, 2026                                 Decided:  June 5, 2026

—————————

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

**ON BRIEF:**  Valerie L. Bateman, NEW SOUTH LAW FIRM, Carrboro, North Carolina, for Appellant.  Harrison M. Gates, Durham, North Carolina, Amie Flowers Carmack, MORNINGSTAR LAW GROUP, Raleigh, North Carolina, for Appellees.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dr. Wei Jiang appeals the district court's Rule 12(b)(6) dismissal of her complaint, contending that the court required too much of her pleadings and erred in concluding that she failed to allege sufficient facts to support her claims of race, national origin/color, sex, and age discrimination and retaliation against her employer and supervisors. Having reviewed the complaint and Dr. Jiang's proposed amended complaint, we discern no error and affirm the district court's judgment.

## I.

Dr. Jiang has spent most of her professional career at Duke University.[1][2] Originally employed as research associate in 1989, she was eventually awarded tenure as a full professor in 2014. Throughout her career, Dr. Jiang has collaborated with colleagues in China, taking trips and attending or presenting at conferences there while also visiting her family. For about five years of her clinical research, Dr. Jiang worked as the "[p]rincipal (but not sole) [i]nvestigator," J.A. 16, on a study about "the effects of the drug escitalopram on patients with myocardial ischemia," known as the REMIT study ("Responses of Myocardial Ischemia to Escitalopram Treatment"), J.A 9–10. Following that study, Dr.

---

[1] Dr. Jiang's joint employers are defendants Duke University and Duke University Health Systems. Because we see no meaningful difference in the allegations or claims against them here, we refer to the two collectively as "Duke University."

[2] Because we are reviewing the district court's grant of a Rule 12(b)(6) motion to dismiss, we draw the facts from Dr. Jiang's complaint. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 680 (4th Cir. 2018) ("Because the district court dismissed the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept and recite the alleged facts in the light most favorable to the plaintiff[].").

2

Jiang and her cohorts published six papers in various medical journals, including a 2013 paper published in the Journal of the American Medical Association (JAMA). Dr. Jiang anticipated writing more papers based on the REMIT study's findings.

In July 2017, defendant Moira Rynn was appointed to serve as chair of the Department of Psychiatry and Behavioral Sciences at Duke University; as a consequence, she became Dr. Jiang's direct supervisor.[3]

The following spring, Rynn instigated a departmental audit of the REMIT study, which spurred almost two years of additional internal and external reviews. Before the results of the departmental audit were completed, Rynn procured Dr. Jiang's consent to follow up the departmental audit with a university-level audit. And when the departmental audit concluded, it too recommended an "escalat[ion]" to the university level based on concerns about the REMIT study "that may affect data integrity, subject safety and the concern for proper [principal investigator] oversight." J.A. 19.

The subsequent university-level audit did not find any patient-safety concerns, but did register concerns about protocol adherence and "good clinical practices," which warranted follow up. J.A. 21. The university-level audit thus recommended "consult[ation] with a statistician to evaluate if and how data quality issues impact existing and future publications." J.A. 21. Given the "[p]rotocol and documentation concerns" flagged by the university-level audit, J.A. 21, Duke's Institutional Review Board (IRB) reviewed the

---

[3] Defendant Mary E. Klotman was appointed as Dean of the Duke University Medical School in July 2017, and in that capacity held a supervisory role over both Rynn and Dr. Jiang.

REMIT study further, and agreed with that audit's recommendations, including the suggestion to obtain an independent expert opinion on some of the study's reporting methods.

Instead, Rynn referred the IRB's recommendations back to the department level to obtain a second opinion focusing on the concerns flagged by the university-level audit and IRB review. After the second department-level review was finalized and reported to the IRB for consideration, the IRB determined that no more action was necessary beyond what it had originally recommended.

Thereafter, Rynn reported the results of the various REMIT study audits to the U.S. Department of Health and Human Service's Office of Research Integrity (DHHS). This led DHHS to initiate an inquiry into potential "research misconduct" related to the REMIT study, which in turn pulled in Duke's Standing Committee on Misconduct in Research (SCMR). Those investigations confirmed "that protocol deviations had occurred" and so in the fall of 2019, several recommendations were made, including one to contact JAMA and other publications about possible corrections to articles published about the REMIT study. J.A. 41; *see* J.A. 39–41.

In tandem with the various audits and investigations into the REMIT study, Dr. Jiang's salary and certain professional opportunities took a hit. In July 2018 (around the time of the escalation to the university level), her salary was reduced from just over $200,000 to just shy of $153,000. A year later (during the DHHS and SCMR investigations), it was reduced to just over $34,000, and has remained there since. Rynn also decided to cancel a government grant that Dr. Jiang had been awarded, a move that

4

Dr. Jiang alleges violated Duke's protocols for cancelling government funding. She also forbade Dr. Jiang from obtaining funding for her position through other grants. Both decisions contributed to her substantial reduction in salary. Separately, while the later audits were underway, Dr. Jiang was prevented from traveling to China for further University-driven research opportunities, having been told that she should instead remain available to the audit investigators.[4]

In November 2020, Dr. Jiang—through counsel—filed a discrimination charge with Duke University alleging that it (and Rynn and Klotman) unlawfully discriminated against her as grounds for the above-described REMIT study audits and related consequences on her reputation and career.[5]

The following month, consistent with the recommendations of the 2019 reviews of the REMIT study, Rynn directed the Director of Duke University's relevant clinical research unit to send a letter to JAMA informing it of issues with the REMIT study and laying the groundwork for it to issue any needed corrections or a retraction. What followed

---

[4] While Rynn initiated the departmental audit, throughout the later audits and responses directed at Dr. Jiang, Klotman reviewed and supported Rynn's decisions over Dr. Jiang's repeated protestations. In Klotman's assessment, Rynn's "more restrictive corrective actions [were] based on the totality of information available to her regarding [Dr. Jiang's] work within the Department," including the findings of *all* the various audits and reviews. J.A. 61. Thus, in her view, even if no one audit recommended a particular action, Rynn was still acting within her authority to respond as she did given the broader context in which she was operating.

[5] This letter is not identified in the initial complaint, but was cited in Dr. Jiang's opposition to the motion to dismiss and then included as an allegation in the amended complaint.

was a lengthy collaborative process with JAMA in which Dr. Jiang successfully lobbied to prevent JAMA from retracting the paper outright.

In 2022, Dr. Jiang filed her complaint in the U.S. District Court for the Middle District of North Carolina, alleging claims against four defendants (collectively "Defendants"): Duke University, Duke University Health Care System, Rynn, and Klotman. Running over sixty pages long, the complaint recounts the above-described saga of professional disagreement surrounding the propriety of and conclusions reached by the REMIT study audits.

Periodically, Dr. Jiang interjects that the reason why a particular action occurred was because of her race, national origin/color, sex, and age, or that these grounds were why Dr. Jiang was targeted unlike other similarly situated—yet unidentified—researchers. *E.g.*, J.A. 15 ("The difference in the salary paid to Plaintiff and the salary paid to other similarly situated individuals is attributable to discrimination based on Plaintiff's race, age, sex, and national origin."); J.A. 18 ("Rynn treated Plaintiff differently based on her race, sex, national origin, and age, and she instigated no other such audits of researchers similarly situated to Plaintiff."); J.A. 33 ("[T]he reasons given for the cancellation of this [federal] grant were pretext for Rynn's age, sex, race, and national origin discrimination against Plaintiff.").

These allegations form the basis for Dr. Jiang's two omnibus claims. First, that Duke University violated Title VII and the ADEA by discriminating in the form of disparate treatment and creating a hostile work environment and retaliating against her on the basis of age, sex, and national origin/color. And second, that Rynn and Klotman violated 42

U.S.C. § 1981 by discriminating in the form of disparate treatment and creating a hostile work environment and retaliating against Dr. Jiang on account of her race and national origin.[6]

Defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim, and the district court granted the motion. In its view, the complaint failed to allege anything that would support a reasonable inference that Dr. Jiang was discriminated or retaliated against on account of a protected ground. It relied on the conclusory and speculative nature of her allegations of unlawful discrimination, as well as the complaint's failure to identify or describe the purportedly similarly situated comparators or plausibly allege any factual allegations pertinent to her age discrimination claim. As for the retaliation claims, the court tracked the timing of the allegedly protected activities and retaliatory response, concluding that the complaint failed to adequately allege either a protected activity or a retaliatory response as to each of the grounds Dr. Jiang proffered.

Dr. Jiang moved to reopen under Rule 59(e) so that the district court could consider her motion to amend the complaint. The district court concluded that Dr. Jiang would be able to show cause to reopen under Rule 59(e) if her amended complaint was not futile, but that her proposed amendments did not cure any of the original complaint's deficiencies, thus rendering amendment futile. For that reason, it denied both motions.

---

[6] The complaint originally alleged a conspiracy to violate civil rights claim under 42 U.S.C. § 1985, but Dr. Jiang has not raised any issues relating to its dismissal in her opening brief on appeal. Moreover, such a conspiracy was not included as a cause of action in her amended complaint. As a result, it is not before us in this appeal.

Dr. Jiang timely noticed her appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, Dr. Jiang argues that the district court required too much of her complaint and did not properly apply the Rule 12(b)(6) standard; that she plausibly alleged violations of federal law in the form of discrimination and retaliation; and that the court erred in denying her Rule 59(e) motion seeking leave to amend her complaint because the new allegations cured any defects in her original complaint.

Dr. Jiang makes many arguments in support of each of these primary contentions, and we have considered and reject the notion that any reversible error occurred, even if we do not expressly discuss those arguments in this opinion.

## A.

"To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim across the line from conceivable to plausible." *Houck v. Subst. Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (cleaned up); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating plaintiffs must do more than "plead[] facts that are merely consistent with a defendant's liability"; rather, the facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (cleaned up)). But when reviewing the plausibility of a complaint's allegations, courts need not "accept the legal conclusions drawn from the facts, [or] accept as true unwarranted

8

inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (cleaned up). "A plausible claim to relief 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678).

The Court reviews the district court's dismissal under Rule 12(b)(6) de novo, accepting as true all the factual allegations in the complaint, and drawing all reasonable inferences in favor of the nonmoving party—here, Dr. Jiang. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

Having reviewed the district court's decision, we reject Dr. Jiang's contention that it misapplied the Rule 12(b)(6) standard and required her to plead her full prima facie case. Although she is correct that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), she is wrong in asserting that the district court required that of her. To the contrary—the district court analyzed the complaint and addressed the parties' contentions in favor of and opposing the motion to dismiss. That analysis necessarily included a discussion of the *McDonnell Douglas*[7] burden-shifting framework because that is how Dr. Jiang pleaded her case and framed her arguments when opposing the motion to dismiss.

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973).

9

Moreover, a plaintiff always bears the burden of pleading plausible allegations to support each element of her claim, which includes the burden of proving causation. *E.g.*, *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Reading the district court's analysis as a whole reveals that it correctly referenced our governing case law and applied those principles to conclude that Dr. Jiang failed to plausibly allege that discriminatory motive played a role in any of the challenged conduct. For these reasons, we reject Dr. Jiang's argument that the district court improperly applied the Rule 12(b)(6) standard.

Dr. Jiang next challenges the district court's determination that she did not plausibly allege her discrimination claims. As pleaded, Dr. Jiang has set forward a repetitive narrative about professional disagreements related to research standards. And in that narrative, she has periodically shoehorned conclusory allegations that the actors unlawfully discriminated against her based on her membership in several protected classes. Such bare recitations are not sufficient to survive a Rule 12(b)(6) motion. *Katti*, 161 F.4th at 228 ("By offering speculation rather than facts, [the plaintiff] pled precisely the kind of labels, conclusions, recitation of a claim's elements, and naked assertions that the Rules of Civil Procedure forbid." (cleaned up)).

At other times in her complaint, Dr. Jiang quotes extensively from Defendants' own statements that provide non-discriminatory reasons for the treatment she complains about, but then asks the court to ignore those reasons and instead counterintuitively accept that she was treated that way because of her protected classifications. Despite her repeated conclusory recitations that Defendants' actions were motivated by unlawful motivations,

10

Dr. Jiang offers no connective allegations that permit such a leap. And without those allegations as a springboard, her complaint cannot survive a Rule 12(b)(6) motion to dismiss. *See id*. Relatedly, Dr. Jiang's cursory assertion that others outside her protected classifications were not subject to similar treatment does not, without more, permit an inference of unlawful discrimination based on similarly situated comparators that this Court has deemed sufficient to survive a motion to dismiss. *See, e.g.*, *Johnson v. Baltimore City, Md.*, 163 F.4th 808, 815–19 (4th Cir. 2026). In short, Dr. Jiang's allegations do not raise a right to relief on her discrimination claims "above the speculative level," and the district court properly granted Defendants' motion to dismiss these claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Dr. Jiang's challenge to the district court's retaliation analysis fares no better. Her primary contention appears to be that Defendants retaliated against her for engaging in protected activity—i.e., filing a discrimination charge in November 2020--by submitting their own letter to JAMA reporting the REMIT study audits. At the outset, she failed to include this allegation in her initial complaint. But substantively, and as the complaint acknowledges, notifying publications, like JAMA, of the audits' results had been recommended well before Dr. Jiang filed her own discrimination charge with Duke University. And an act that culminates from a decision *preceding* protected activity by definition cannot be retaliatory. *E.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010).

Dr. Jiang identifies another purported protected activity: asking the University ombudsman to attend one meeting she had with Rynn and later discussing with him her

desire to discuss the REMIT study with her collaborators. We agree with the district court that the complaint did not plausibly allege that such conduct constituted "protected activity," given the lack of any allegations showing that her request qualified as conduct opposing unlawful discrimination rather than just wanting professional support during a potential professional dispute. In other words, she has not plausibly alleged that her other conduct was undertaken in opposition to "an unlawful employment practice" under federal law. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *accord Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (concluding that to "oppose" in this context means "to resist or antagonize . . . ; to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion" (cleaned up)). We therefore discern no reversible error in the district court's decision to grant Defendants' motion to dismiss under Rule 12(b)(6).

## B.

Dr. Jiang also asserts that even if the original dismissal was proper, the district court erred by denying her motion to reconsider under Rule 59(e) so that she could file an amended complaint and determining that amendment would be futile.

"[A] district court may not deny . . . a motion [to amend the complaint under Rule 15(a)] simply because it has entered judgment against the plaintiff[.]" *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). "Instead, a post-judgment motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Id.* "There is one difference between a pre- and a post-judgment motion to amend: the district court may not grant the post-judgment

12

motion unless the judgment is vacated pursuant to [Rule] 59(e) or [Rule] 60(b)." *Id.* And "[a] conclusion that the district court abused its discretion in denying a motion to amend . . . is sufficient grounds on which to reverse [its] denial of a Rule 59(e) motion." *Id.* at 428.

Here, the district court relied solely on futility as the basis for denying Dr. Jiang's motion to amend. So under the above-recited standards, the inquiry into the propriety of denying both motions collapses into whether the court abused its discretion in deeming the amendment futile. *See Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (observing that Rule 15(a) and Rule 59(e) motions rise and fall together). Amendment is futile when the amended claim would fail to survive a motion to dismiss under Rule 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Thus, in assessing futility, the Court applies the same Rule 12(b)(6) standard set out earlier, only now with respect to the proposed amended language.

Having reviewed the amended complaint, we conclude that the district court did not abuse its discretion in finding that amendment would be futile. Many, if not most, of the proposed changes do precious little to advance any of Dr. Jiang's substantive allegations and instead engage in additional ad hominem attacks against Rynn.[8] *E.g.*, J.A. 356–57 ("During her years of employment . . . , Plaintiff developed a strong reputation as a researcher, collaborator, and presenter <u>unlike Defendant Rynn who resented her for the same, and who is not a tenured professor</u>."); J.A. 363 ("<u>Defendant Rynn is not a tenured professor, and her research career pales in comparison to Plaintiff's</u>."). A handful of

---

[8] The new language in the amended complaint is underscored, while language found in both versions of the complaint is in plain font.

proposed amendments add cursory allegations attempting to suggest the existence of unknown comparators while using placeholder descriptors, but these changes do not render her allegations any more plausible than the initial complaint. *E.g.*, J.A. 362 ("other non-Asian, male, and younger physicians have been hired by Defendants . . . at much higher salaries"); *id.* (". . . other faculty members, whose names have not yet been discovered, but will be identified as John Doe, Jack Smith, and James LNU, who were similarly situated to Plaintiff but not older, Asian, and female"). Similarly, while the amended complaint added dates for when Dr. Jiang filed the discrimination letter and charge she asserts as protected activities (November 12 and 20, 2020), that does not change the district court's substantive analysis about why she failed to plausibly allege that the JAMA letter was sent in retaliation for that activity. Nor does an allegation that Defendants represented to a third-party that Dr. Jiang had "retired" when "she clearly has not" show "discriminatory treatment of Plaintiff based on her age." J.A. 414.

At bottom, Dr. Jiang's new allegations do not fill the causal gap about a discriminatory or retaliatory motive missing in her original complaint. Nor do they cast doubt on the otherwise-pleaded legitimate, nondiscriminatory reasons for Defendants' actions. The amended complaint would equally be subject to dismissal under Rule 12(b)(6) for failure to allege plausible claims for relief. *See Katti*, 161 F.4th at 224, 228. Therefore, the district court did not abuse its discretion in denying Dr. Jiang's post-judgment motion to reconsider and motion to amend the complaint.

14

III.

For the reasons stated, the judgment of the district court is affirmed. We dispense

with oral argument because the facts and legal contentions are adequately presented in the

materials before this court and argument would not aid the decisional process.

*AFFIRMED*